FILED
2011 Mar-23  AM 09:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

GERALD NEIL LINDLEY,

      Plaintiff,

vs.                                                                 CASE NO. CV-10-J-141-S

CITY OF BIRMINGHAM, ALABAMA,
et al.,

      Defendants.

## MEMORANDUM OPINION

Pending before the court is defendants City of Birmingham, Mayor William A. Bell, Sr.,[1] Chief A.C. Roper, Deputy Chief Faye Lampkin, and Jail Chief Kathie Davis' renewed motion for summary judgment (doc. 60), memoranda and evidentiary submissions (doc. 61).[2]  No response has been received from the plaintiff.[3] Having

---

[1]Defendant Mayor Bell was not Mayor of the City of Birmingham during the time the events about which the plaintiff complains occurred.

[2]The plaintiff also named Dr. Adam Robertson, First Line Care, P.C., Always There In-Home Care, Inc., Nurse Freida L. Taylor, Nurse Alinda Brown, Correctional Officer John Glenn, Correctional Officer Marshall Smythe, Correctional Officer Tangery Thomas, Correctional Officer Bernadine Harper, Correctional Officer Marsha R. Smith, Correctional Officer Shawn A. Simmons, Correctional Officer Stacy S. Jones, Correctional Officer Erik Henderson, Correctional Officer Wanda Sanders, Correctional Officer Josslyn A. Tarver, Correctional Officer Ralph Lawrence, Sergeant Verlyne Moten and Janet Moore.  Service was never obtained on these defendants.  Therefore, the court shall dismiss without prejudice all claims against these unserved defendants by separate order.

The court has previously dismissed the claims against the remaining individual defendants in their official capacities, as well as the claims against the "City of Birmingham

1

considered the pleadings, evidence and arguments of the parties, the court finds as follows:

## Factual Background

In the light most favorable to the plaintiff, the court finds the following facts relevant to the plaintiff's claims and the defendants' motion for summary judgment.

The plaintiff, Gerald Neil Lindley filed suit based on his incarceration at the Birmingham City Jail from January 24, 2008, until February 2, 2008.  Amended complaint, ¶ 32.  He was arrested for three traffic tickets dating from 2002 and 2003, for which he claims he had already served a sentence from November 2005 to

---

Police Department" and the "City of Birmingham Jail."  Court Orders of March 11, 2010 (doc. 9); and January 20, 2011 (doc. 54).

[3]The defendants' first motion for summary judgment was filed August 20, 2010 (doc. 17). The plaintiff filed a response in the form of a Rule 56(f) affidavit and a motion to compel Rule 26 disclosures on August 31, 2010 (docs. 19 and 20).  The court granted the motion to compel and extended the deadline for responding to the motion for summary judgment as well as the pre-trial and trial dates (doc. 22).  The plaintiff thereafter filed a response and evidence in opposition to the motion for summary judgment (docs. 27 and 28).  At the same time, the plaintiff filed a motion for extension of time to respond and a motion to compel (docs. 25 and 26) so a deposition could be taken.  The court again granted the motion to compel and the motion to extend time to respond (docs. 29 and 30).  The plaintiff then filed a motion for sanctions (doc. 42) and a supplemental response to the still pending motion for summary judgment (docs. 43 and 44).  The court granted the motion for sanctions in part, allowing the plaintiff until December 31, 2010, to amend his complaint, take additional or supplemental depositions and again resetting the case for trial and pretrial (doc. 45).  The amended complaint was filed on December 31, 2010, which the court found rendered the first motion for summary judgment moot (docs.50 and 51). The court then allowed until February 28, 2011, for filing of dispositive motions (doc. 52).  The court attached a submission order allowing for fourteen days for responsive briefs.  On February 25, 2011, the defendants filed the current motion, but no response from the plaintiff has been received to date.  However, the court has considered all of the plaintiff's prior submissions in addressing the pending motion.

February 2006.[4]  Amended complaint, ¶¶ 30-31; plaintiff exhibit 5.[5]  During his 2008 incarceration, the plaintiff developed a sore on his leg, which became infected, swollen, and inflamed.  Plaintiff exhibit 6.  The plaintiff asserts he began to request medical attention on January 27, 2008, but was never seen by a physician and received no care for his wound.  Amended complaint ¶¶ 35-38; plaintiff exhibit 5; plaintiff exhibit 6.  He states the defendants were aware of his condition and need for treatment, and that he filled out medical forms three times each day.  Plaintiff exhibit 6; amended complaint, ¶ 35.

Upon his release from the Birmingham City Jail, the plaintiff was transferred to the custody of Shelby County sheriff deputies due to an outstanding warrant in Shelby County.  Amended complaint,  ¶ 40; plaintiff exhibits 8, 13.  While being booked into the Shelby County Jail, the plaintiff informed the deputies he had an infected sore on his right knee.  Plaintiff exhibit 6.  A nurse was called to the booking area to examine his knee, and she informed the deputy that the plaintiff needed to be

---

[4]Both the plaintiff and defendants allege these tickets dated from 2005 or 2006.  The tickets submitted and the court records reflect tickets from 2002 and 2003, followed by "failure to appear" notations dating from 2003 and 2005.  *See* plaintiff's exhibits 1-4 and plaintiff affidavit (exhibit 6).  The plaintiff further explains he served 70 days at the jail from November 2005 until February 2006 in order to receive credit on these outstanding fines, and the entire amount was therefore paid in full.  Plaintiff affidavit (exhibit 6).

[5]All references to plaintiff's exhibits are from plaintiff's response to the defendants' first motion for summary judgment.

taken to a hospital. *Id*. A Shelby County deputy took the plaintiff to Shelby Baptist Medical Center, where plaintiff was diagnosed with a Staph/MRSA infection and underwent two separate surgeries, the second of which including opening the plaintiff's leg from his thigh to mid-calf in order to allow the infection to drain and to relieve the pressure. Amended complaint, ¶ 43; plaintiff exhibits 6 and 14. The plaintiff was hospitalized for twelve days, and the wound took approximately ten months to heal. Plaintiff exhibits 5 and 6.

The plaintiff states causes of actions in his complaint for four claims – that defendants violated his rights under the Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitutions by acting with deliberate indifference to plaintiff's serious medical needs (Count I); that he was deprived of equal protection of the law in that non-Caucasian inmates were provided medical attention and services while Caucasian inmates were not (Count II); the defendants' acts and omissions were the result of neglect, carelessness and/or unskillfulness (Count III); and spoilation of evidence (Count IV).[6]

---

[6]Although the plaintiff states in his amended complaint that his Constitutional rights were violated by his arrest on invalid warrants, he fails to state a claim for such violation in the counts of his complaint. Because the same was not brought in compliance with Rule 10(b), Fed.R.Civ.Pro., the court does not consider this claim as properly before it. *See e.g., Dismuke v. Florida Bd. of Governors* 2005 WL 1668895, 2 (M.D.Fla.2005), citing *Anderson v. District Bd. of Trustees of Cent. Fla. Community College*, 77 F.3d 364, 366 (11th Cir.1996) (Plaintiff's complaint contained unnecessary factual allegations that were not material to any cause of action).

## Standards for Evaluating a Summary Judgment Motion

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts

5

showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

Although the plaintiff has failed to file a response to the defendants' motion for summary judgment, no procedural tool for a default summary judgment exists under Fed.R.Civ.Pro. 56(e). The court must still find that summary judgment is appropriate from the pleadings and the evidence. However, "the language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. With these standards in mind, the court considers each of the plaintiff's claims.

## Legal Analysis

### A. Deliberate Indifference to Serious Medical Needs

In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that prison officials who show deliberate indifference to a

prisoner's serious illness or injury violate the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment.  Such a transgression gives rise to a prisoner's action under 42 U.S.C. § 1983.  *Taylor By and Through Walker v. Ledbetter,*  818 F.2d 791, 795 (11th Cir.1987).

As a pre-trial detainee, the plaintiff's rights to medical care exist under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment.[7] *See City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).  The standards "for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." *Purcell ex rel. Estate of Morgan v. Toombs County, GA,* 400 F.3d 1313, 1318 n. 13 (11th Cir.2005)(quoting *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1024 n. 5 (11th Cir.2001).  *See also McDowell v. Brown,* 392 F.3d 1283, 1290 n. 8 (11th Cir.2004); *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir.1994); *Hamm v. DeKalb County,* 774 F.2d 1567, 1574 (11th  Cir.1985) (holding that "in regard to providing pretrial detainees with such basic necessities as ... medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons.").

---

[7]The plaintiff states that he was a pretrial detainee because of the hold Shelby County had.  *See* plaintiff's memorandum in response to the first motion for summary judgment (doc. 27) at 6 n.1.

To avoid summary judgment on this claim, the plaintiff must establish deliberate indifference to serious medical needs on the part of a jail official. *See Estelle*, 429 U.S. at 105. Medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference. *Adams v. Poag,* 61 F.3d 1537, 1544, (11th Cir. 1995)(quoting *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986)). In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. He must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir.2007). *See also Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir.2003); *Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir.1989); *Carswell v. Bay County*, 854 F.2d 454, 457 (11th Cir.1988); *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 704 (11th Cir.1985) (stating the standard as requiring knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference).

A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention.'" *Goebert,* 510 F.3d at 1326 (quoting

*Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1187(11th Cir.1994).

For purposes of this opinion, the court will assume both that a staph infection

requiring surgery meets the objective component of a "serious medical need" and that

the infection was such that it was in need of medical care at the time the plaintiff was

housed in the Birmingham City Jail.

As for the subjective component, the Eleventh Circuit has consistently required

that "a defendant know of and disregard an excessive risk to an inmate's health or

safety." *Haney v. City of Cumming*, 69 F.3d 1098, 1102 (11th Cir.1995).  Under the

subjective prong, an inmate "must prove three things: (1) subjective knowledge of a

risk of serious harm;[8] (2) disregard of that risk; (3) by conduct that is more than

[gross] negligence." *Goebert*, 510 F.3d at 1327 (internal punctuation and citation

omitted).  It is legally insufficient to sustain a cause of action for deliberate

indifference to serious medical needs simply because the inmate did not receive the

---

[8]Moreover, a plaintiff must prove that the law enforcement officer was both "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Knowledge of the asserted serious medical risk of the pretrial detainee or arrestee, or of circumstances clearly indicating existence of such risk, is essential to finding that officers were deliberately indifferent, as required to support a finding of the Fourteenth Amendment violation. *Young v. City of Mount Rainer*, 238 F.3d 567, 575-76 (4th Cir.2001); *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653 (6th Cir.1994).

medical attention he deemed appropriate. *Harris,* 941 F.2d at 1505. If there is no

deliberate indifference, there can be no violation of a constitutional right and hence

no § 1983 liability. *See e.g., Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022

(11th Cir.2001).

As the Eleventh Circuit has detailed:

[A]n official acts with deliberate indifference when he knows that an
inmate is in serious need of medical care, but he fails or refuses to obtain
medical treatment for the inmate. Alternatively, even where medical care
is ultimately provided, a prison official may nonetheless act with
deliberate indifference by delaying the treatment of serious medical
needs, even for a period of hours, though the reason for the delay and
the nature of the medical need is relevant in determining what type of
delay is constitutionally intolerable. For example, a defendant who
delays necessary treatment for non-medical reasons may exhibit
deliberate indifference.

*Farrow*, 320 F.3d at 1246 (11th Cir.2003) (internal punctuation and citations omitted).

In the facts before this court, the defendants dispute whether the plaintiff has

established that he had a staph infection while incarcerated at the Birmingham City

Jail. The court finds the evidence, taken in the light most favorable to the plaintiff,

establishes a factual basis for this claim sufficient to survive a motion for summary

judgment. However, the court's inquiry does not end there. The plaintiff must also

provide evidence that a jail official had knowledge of the plaintiff's objective medical

10

needs.[9]   The plaintiff states by affidavit that he repeatedly requested medical

attention, but never received any.[10]   The defendants actually named and served in this

lawsuit stated they had no knowledge of any such requests.  By deposition, multiple

jail employees also testified that they had no records, memory or knowledge of the

plaintiff ever requesting any medical attention.

Because this case is before the court on summary judgment, and because the

court must view the evidence in the light most favorable to the non-moving party, the

court finds that a reasonable juror could find the plaintiff's affidavit to be true and the

multiple jail personnel's testimony that there is no record of plaintiff requesting any

medical attention to be false.   *See e.g., Boutwell v. Federal Mogul*, No. 09-10174

(11th Cir. Sept. 17, 2009) (unpublished) (holding a reasonable factfinder could

conclude that defendant had actual knowledge of a fact, even in the face of contrary

evidence).   Therefore, for purposes of this opinion, the court finds the plaintiff

satisfied the subjective component, that some jail officials, specifically nurses Taylor

and Brown, knew of and disregarded an excessive risk to an inmate's health or safety,

---

[9]Obviously, if the defendants had no subjective knowledge of the risk of serious harm, they could not have disregarded that risk.

[10]In his memorandum in response to the first motion for summary judgment, the plaintiff does not rely on these repeated requests for medical attention to establish subjective knowledge, but rather photographs of the surgical wound, medical records, and the Shelby County deputies' records.  The court notes the Birmingham Jail employees would not have had any of this information as it all postdates plaintiff's incarceration at the Birmingham City Jail.

to be satisfied.

However, because the plaintiff never served the summons and complaint on any of the jail employees who actually had contact with the plaintiff, the court next must consider whether the defendant city, mayor, police chief, or jail administrator can be liable for jail employees failing to provide care for the plaintiff's serious medical needs.   The plaintiff must allege a "causal connection" between the above-named defendants and the asserted constitutional violations.  *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir.1986) (per curiam) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).

The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," *Brown,* 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy ... result[s] in deliberate indifference to constitutional rights.'" *Hartley*, 193 F.3d at 1269 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991)).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003).  Plaintiff has failed to provide any evidence of such a connection with

12

respect to the above-named defendants.

Rather, by affidavit, the plaintiff asserts that he

specifically recall[ed] reporting my medical need to Nurse Fredia Taylor and Allinda Brown. I requested a form to fill out in order to be put on a list to see the doctor. I began filling out the forms at each nurse call until the day I was released to Shelby County. With each day, the condition of my knee became worse. The sore enlarged and continued to swell, the area of redness grew bigger and bigger and my knee became discolored. My knee also became very painful. It was painful to walk and painful to the touch. During the week of January 28, 2008 I continued to fill out requests to see the doctor. I showed my knee to both nurse Taylor and nurse Brown. They told me it was not serious and would only give me a Tylenol pain reliever. At one point, one of the nurses told me that it was only a spider bite and that I should not worry about it. Later in the week, I became feverish...

After being refused medical care for several days, I complained to a correctional officer. I was told that I could fill out a grievance form. However, each request for a grievance form was denied by the correctional officer. The officer would ask me what I was complaining about, and I would explain to them that I felt like I was not receiving appropriate medical treatment. They would refuse to give me a form and tell me [to] fill out a medical request form.

Plaintiff affidavit (exhibit 6).

Defendant A.C. Roper, Police Chief of the City of Birmingham states that he has no knowledge of the events about which the plaintiff complains, no knowledge of plaintiff making any complaint concerning medical treatment, and no knowledge regarding plaintiff complaining about sores on his legs or his legs hurting. Roper affidavit, at 5. Defendant Kathie Davis, City Jail Chief for the Birmingham City Jail,

13

states by affidavit that the plaintiff was arrested on January 24, 2008, based on three outstanding warrants for traffic tickets received in 2005.  Davis affidavit, at 3.  She stated he was held for approximately nine days, then transported to the Shelby County Detention facility by the Shelby County Sheriff's Department for an outstanding felony warrant.  *Id.*  Defendant Davis does not recall the plaintiff requesting any medical treatment or completing any form complaining about a lack of treatment.  *Id.*, at 4.  She testified that when she became aware of his complaint that he did not receive medical care, she checked to see if he had put in requests to see a doctor or nurse and had not been seen.  Davis depo. at 82-83.  She stated she could not find anything where he had put in a request or where he was seen.  *Id.*  Specifically, she went to the nurse's station "to check and see if he had put in a request to see the doctor, had he been treated, because I know staph is – and I know she spelled it incorrectly here.  But I do know staph is very contagious, and if we had someone in our facility that was infected with staph, then we should have all been put on alert, and he may have been – needed to have been housed in a medical unit while incarcerated.  *Id.*, at 85.

Unserved defendant Fredia Taylor, a nurse at the Birmingham City Jail, testified that she was familiar with the plaintiff because he has been incarcerated at the jail multiple times, but that there were no medical files found for him at the jail.

Taylor affidavit, at 1.  She alleges that the jail has a nurse on duty twenty-four hours a day, and that medical request forms are handed out at prisoners' request, as well as placed on top of the water cooler for inmate access at will.  *Id.*, at 2.  Unserved defendant Alinda Brown testified that she had no memory of seeing any request by plaintiff to see a doctor or of him making any type of medical complaint.  Deposition of Brown at 60-64.

Plaintiff alleged in his amended complaint that he completed appropriate request forms, specifically that he "filled out and filed three times per day," written forms indicating "that he had either an infection or a Staph infection."  He alleged by affidavit that he specifically recalls requesting medical care from nurses Fredia Taylor and Allinda Brown.  Similarly, the plaintiff claims he asked for medical and grievance forms from Correctional Officers Glenn and Marshall and did not receive any forms.  However, plaintiff failed to ever serve these defendants with the summons and complaint.

In his supplemental response to the first summary judgment motion (doc. 43), the plaintiff asserts that "[t]here is direct evidence of the Defendants' knowledge of Lindley's serious medical condition."  Supplemental response, at 1.  However, the evidence the plaintiff then cites shows only that on January 31, 2008, a correctional officer working the morning shift made the notation, "C/O Thomas & Harper assign

15

(sic) to J2.   It was stated J2A–cell 6 has staff (sic) infection couldn't roll call & security check."   Exhibit B to plaintiff's supplemental response.   The note further reflects it was "could not be verified by [illegible]."[11]   *Id.*   A continuation under the same date and time, but in a different handwriting, states, "There is no medical documentation on detainee's having staff (sic) infection."   *Id.*   On February 1, 2008, a notation for the evening shift states "c/o's Henderson and Sanders releived (sic) c/o's Bailey, and Niochols of their duties.   Detainee Gerald Lindley W/M has a staff (sic) infection to the leg.   Detainee."   *Id*.   On February 2, 2008, a notation reflects that "Sgt. Moten contacted c/o Edison at 1406 hours and informed him that J-2 A #6 needed to be mop (sic) and sink cleaned."   *Id*.

Plaintiff leaps from the above evidence to the conclusion that "[T]his direct evidence combined with the circumstantial evidence discussed in the Plaintiff's initial response provides substantial evidence of the Defendant's knowledge of his serious medical condition.   Plaintiff's supplemental response, at 3.   Unfortunately, the court is unable to make this mental leap with the plaintiff.   The evidence submitted demonstrates that several correctional officers knew the plaintiff had something wrong with his leg, and someone determined it to be a staph infection.   However,

---

[11]Defendant Davis testified that all she can take from this note is that somebody logged that a person in cell number 6 has a staph infection, and further that someone did look into it because of the notation that it "could not be verified."   Davis depo. at 119-120.

there is no evidence upon which the court can find that the defendants the plaintiff actually named in his complaint and on whom he obtained service had knowledge of his medical condition.

According to defendant Davis, had the plaintiff indicated "yes" on any of the initial intake screening questions concerning a medical condition on January 23, 2008, he would have been referred to the nurse.  Davis depo. at 64.  Had the plaintiff asked for and filled out a doctor request form, he would have been referred to the nurse.  *Id.*  If such a form had been completed, a record of the same would be at the nurses' station.  Davis depo. at 65-66.  Additionally, if he related to a guard that he needed to see a nurse, he would have been referred.  *Id.*, at 65.  Again, this would generate some type of paperwork with the nurses.  *Id.* at 67-68.

Because the plaintiff has produced evidence that a guard noted that the plaintiff had a "staff infection" on January 31, 2008, the court finds that the plaintiff at some point must have informed a jail guard of this.  However, plaintiff has not named as a defendant and obtained service on any jail guard.   In other words, he has failed to establish a causal connection, a necessary element of his claim.  *See e.g., Zatler*, 802 F.2d at 401 (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).

Each of the individual defendants, actually served with the summons and

17

complaint allege that he or she was not deliberately indifferent to the plaintiff's serious medical needs, as required for plaintiff to get past qualified immunity.  No evidence exists that defendants Mayor Bell, Chief Roper, Deputy Chief Lampkin, or Jail Chief Davis made any decisions regarding the medical treatment provided to plaintiff, had any knowledge of the lack of medical care alleged by plaintiff, or was ever given any reason to believe that jail policies and procedures were not followed.

Because the plaintiff has stated claims against the City of Birmingham and the mayor of Birmingham, the court has further considered "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120, 112 S.Ct. 1061, 1066; 117 L.Ed.2d 261 (1992).  Assuming the court found a constitutional violation, the plaintiff cannot establish any basis for holding the City of Birmingham liable for it.

The United States Supreme Court has stated:

> We have consistently refused to hold municipalities liable under a theory of respondeat superior.  *See Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985) (plurality opinion); *id.*, at 828, 105 S.Ct., at 2438 (opinion of BRENNAN, J.); *Pembaur, supra,* at 478-479, 106 S.Ct., at 1297-1298; *St. Louis v. Praprotnik*, 485 U.S. 112, 122, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988) (plurality opinion); *id*., at 137, 108 S.Ct., at 931 (opinion of BRENNAN, J.)*; Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989).

Instead, in *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. *See Monell, supra*, at 694, 98 S.Ct., at 2027; *Pembaur, supra*, at 480-481, 106 S.Ct., at 1298-1299; *Canton, supra*, at 389, 109 S.Ct., at 1205. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Monell, supra*, at 694, 98 S.Ct., at 2027.

*Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 403-404, 117 S.Ct. 1382, 1388 (1997).

There is no evidence that any of the individual defendants' responses were inadequate, as there is no evidence that any of them knew of the need.  Neither a mayor, a chief of police, a chief jailer, nor a deputy jailer can be held liable on a theory of respondeat superior, rather the plaintiff must establish that each of these individuals was deliberately indifferent to the plaintiff's needs.   Similarly, a municipality may not be held liable solely because it employs a tortfeasor because of the lack of respondeat superior liability under § 1983.  *City of Canton*, *Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989).

In an attempt to establish a causal connection, the plaintiff argues that

Neither Moten nor Davis could testify that they ever discovered any documents reflecting that Lindley received any medical attention or treatment.  However, from the notations in the Post Ledger, we know that Lindley's condition was brought to the attention of not only the

> correctional officer, but of Sgt. Moten .... An inference can be drawn
> that if Moten or the correctional officer had called the nurse, there
> would be some documentation of the call and some documentation of
> what the nurse did in response to the information.  The absence of
> evidence indicates that either the correctional officer or Moten made a
> medical determination that Lindley was not to receive medical attention.
> This inference is supported by Chief Davis (sic) testimony that if a nurse
> had been called, there would be documentation of that fact, and that
> when she learned of the situation in 2008 she checked to see if there was
> any medical documentation, but found none.

Plaintiff's supplemental response, at 4.  Assuming that the plaintiff's argument is indeed evidence that either an unnamed correctional officer or Moten made a determination that Lindley could not have medical care, this does not help the plaintiff establish liability against the defendants he actually sued.

 "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir.1993) (internal quotation marks and citations omitted).  The Eleventh Circuit held that a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation.  *Douglas v. Yates*, 535 F.3d 1316 (11th Cir.2008) (citing *Pamel Corp. v. P.R. Highway Auth*., 621 F.2d 33, 36 (1st Cir.1980) ("While we do not require technical niceties in pleading, we must demand

that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")).

Rather than specify what the named and served defendants did to contribute to the violation of plaintiff's constitutional rights, the plaintiff states only that

> Lindley has shown personal participation by one or more of the Defendants in the acts, omissions and decisions which prolonged the time during which Lindley lacked medical treatment and consequently their actions or inactions caused his condition to worsen and increased his injury.

Plaintiff's memorandum in response to the first motion for summary judgment, at 12.

Due to the absence of an allegation of any connection between any actions of the named defendants with the alleged unconstitutional deprivation, plaintiff fails to state a claim for relief against these defendants on the above mentioned claims.  To the extent that plaintiff blames defendants Bell, Roper, Davis and Lampkin for the acts of their subordinates regarding plaintiff's claims of deliberate indifference to his medical needs, his claims fail. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted); see also *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 691 & 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Likewise, employers such as defendant City of Birmingham and or defendant

21

Bell cannot be sued under § 1983 simply on a theory of respondeat superior.  To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor-employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. *Hartley*, 193 F.3d at 1269 (citing *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990)).  In other words, municipal liability can attach under § 1983 only where a deliberate choice to follow a course of action is made from among various alternatives by city policymakers. *See City of Canton*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1205; citing *Pembaur v. Cincinnati*, 475 U.S. 469, 483-484, 106 S.Ct. 1292, 1300-1301, 89 L.Ed.2d 452 (1986).

As noted above, Plaintiff has not alleged that the above-named defendants actually participated in plaintiff's claims of deliberate indifference to his serious medical needs. Moreover, plaintiff has not proffered any reason to support that these defendants violated any of plaintiff's constitutional rights.[12]  The plaintiff has further failed to produce any evidence that his lack of treatment was due to a custom or policy of the city.  Rather, the evidence produced by the plaintiff in the form of depositions establishes that the city had both formal and informal policies in place for

---

[12]Because the court finds that the defendants have no liability for any violation of the plaintiff's constitutional right to adequate medical treatment while incarcerated, the court does not consider the parties' arguments concerning qualified immunity in this context.

prisoners in the city jail to receive medical treatment.  *See e.g.*, deposition of John Glenn at 17-20, 23, 29, 33-35, 38; deposition of Fredia Taylor at 13-14, 17-18, 22, 24, 39-40; deposition of Alinda Brown at 38, 47-48; deposition of Marshall Smith at 9-10; deposition of Verlyne Moten at 15, 39-40, 42-43, 55, 74-75, 82-86.  As such, the court shall grant defendants' motion on this count of the complaint.

### B. Violation of Plaintiff's Rights of Equal Protection

In connection with his argument that he was denied appropriate medical care, the plaintiff further alleges that this lack of care was because of plaintiff's race, namely because he is white.  To state a valid Equal Protection claim, a prisoner must show: (1) that he has been treated differently from other "similarly situated" inmates, and (2) that this discriminatory treatment is based upon a constitutionally impermissible basis, such as race. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir.2001).  Because  the plaintiff failed to address any Equal Protection claim in his first response to defendants' motion for summary judgment, and failed to respond to the second motion for summary judgment, the court deems any possible claim under the Equal Protection clause to have been abandoned by the plaintiff.  *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.,* 325 F.3d 1274, 1284 (11th  Cir.2003); *see also Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1322 (11th Cir.2001).

### C.  Neglect, Carelessness and/or Unskillfulness

Count III of the plaintiff's amended complaint is based in Alabama Code §
11-47-190, which attaches liability to a municipality for the acts of its employees if
they were negligent, careless, or unskillful while acting in the line of duty.  Recently,
in *Brown v. City of Huntsville, Ala.*, the Eleventh Circuit Court of Appeals
summarized the scope of liability stating "[i]n sum, under § 11-47-190, a city is liable
for negligent acts of its employees within the scope of their employment, but not
intentional torts of its employees."  *Id.,* 608 F.3d 724, 742-743 (11th Cir.2010).

> Plaintiff's sole allegation concerning this claim is that

> Lindley presents sufficient evidence of such action on the part of the
> City employees at the Birmingham City Jail.  Lindley would submit that
> the facts set out above in Section III show that the Defendants were
> performing in their respective scope of employment when they failed to
> provide adequate medical care, and that given the circumstances, their
> failure was neglectful, careless and that they showed a pronounced lack
> of skill in providing medical care.

Plaintiff's memorandum, at 14.

The sole defendant to whom liability can attach under § 11-47-190 is the City
of Birmingham, as employer of the various other named defendants.  The defendants
assert that the plaintiff has failed to establish that the City was negligent in failing to
train or supervise its police officers, correctional officers or medical personnel in any
proper and special training necessary for their duties.  Defendant's brief (doc. 18), at

24

19.  The defendants then outline to training these individuals do receive.  *Id*., at 19-20.  Of course, nothing in that training would immunize the defendant city from liability for the negligence of its employees.   Rather, for an employer to be liable under the doctrine of respondeat superior, the plaintiff must show that an agent of the municipality is liable for a tort. *Ott v. City of Mobile*, 169 F.Supp.2d 1301, 1314 (S.D.Ala.2001).  "If the agent is not liable for any tort, the principal is also absolved." *Id*. (citing *Latham v. Redding*, 628 So.2d 490, 495 (Ala.1993)).

The plaintiff alleges both that the defendant city failed to train its correctional officers and staff concerning MSRA/staph infections and that each correctional officer and jail nurse with whom he came in contact failed to recognize the seriousness of his condition due to unskillfulness, neglect, or carelessness.  Taking all of the evidence in the light most favorable to the plaintiff, he has established that he noticed a sore on his knee on January 28, 2010, for which he received no treatment until his transfer to the care of the Shelby County deputies on February 2, 2010.[13]

The defendants asserts that even if liability could be present under § 11-47-190,

---

[13]The court is aware that the defendants deny plaintiff ever notified anyone at the jail of the condition of his leg.  The plaintiff, by affidavit, has disputed this, stating he repeatedly filled out medical request forms and showed his leg to various jail personnel.  As such, the court is left with a genuine issue of material fact concerning what notification the plaintiff provided to the jail correctional and nursing staff.  This is supported by plaintiff's supplemental evidence which establishes that correctional officers made a notation in a daily log for February 1, 2008, reflecting that the plaintiff had a "staff infection."

Ala. Code § 6-5-338 provides discretionary function immunity to the city employees in their personal capacities. Defendants' brief at 20-24. That section of the Alabama Code provides immunity to municipal officers and the municipalities that employ them, under the following provision:

> (a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Ala.Code 1975 § 6-5-338. The Alabama Supreme Court has ruled, specifically in relation to this statute, that "this Court has expressly determined that a 'jailer ... is a peace officer...'" *Howard v. City of Atmore*, 887 So.d 201, 203-204 (Ala.2003). *See also Sherill v. City of Prattville*, 2005 WL 3277979, 4 (M.D.Ala.2005) ("It is settled that the operation of jails by jailers and municipal police departments is covered by [§ 6-5-338(a)]").

Therefore, the court must determine whether the negligence actions plaintiff complains of are discretionary acts.  Discretionary acts are defined as "those acts to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Sheth v. Webster*, 145 F.3d 1231, 1239 (11th Cir.1998) (quoting *Wright v. Wynn*, 682 So.2d 1, 2 (Ala.1996)).  Accordingly, discretionary immunity should be extended to the named defendants "unless the officer[s'] conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *Ex parte City of Gadsden,* 781 So.2d 936, 938 (Ala.2000); (citing *Couch v. City of Sheffield*, 708 So.2d 144, 153 (Ala.1998)).

Because this case is before the court on summary judgment, the court must consider the evidence in the light most favorable to the plaintiff.  The plaintiff claims he repeatedly asked for medical care, beginning on January 28, 2008.  A log entry dated January 31, 2008, reflects that someone wrote down that an inmate in the very cell were plaintiff was housed, had a staph infection.  A log entry the following day reflects that someone recorded that the plaintiff had a staph infection.  Because there are no records to reflect the plaintiff was provided any medical care, even after the log entries, the court finds the lack of care could be the result of an "officer[s'] conduct [that] is so egregious as to amount to willful or malicious conduct or conduct

27

engaged in bad faith." *Couch*, 708 So.2d at 153. However, the plaintiff has utterly failed to provide the court any evidence as to which defendant, served or unserved, may have had the requisite knowledge for liability.  The plaintiff has offered no evidence as to who made the notations in question, or any evidence that any served defendant was made aware of the notations.  Therefore, the court must grant the motion for summary judgment on this count of the complaint as well.

### D. Spoilation of Evidence

The plaintiff asserts that the defendants failed to retain copies of "in-house" reports for the eight hour time period from 1500 to 2300 hours on February 1, 2008. The plaintiff refers to this one report as "vital" to the claims of the plaintiff. Amended complaint, ¶ 80.  Because this is a claim brought under state law, the plaintiff must establish that he has brought this claim in accordance § 11-47-23, Ala.Code, that is, that he presented a claim to the City for this particular cause of action.  Under that code section, the plaintiff must present his claim to the municipality within two years of its accrual.  The plaintiff fails to allege he followed this administrative prerequisite prior to filing this claim for the first time in his amended complaint.  As such, the court finds this claim barred.

28

## <u>Conclusion</u>

The court having considered the foregoing, and being of the opinion that summary judgment is due to be granted in favor of the defendants and against the plaintiff on all counts of the plaintiff's amended complaint, the court shall so rule by separate Order.

**DONE** this the 23rd day of March, 2011.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE